**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McNamara-Smith v. Grube*, Slip Opinion No. 2026-Ohio-3035.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-3035

[THE STATE EX REL.] MCNAMARA-SMITH ET AL. *v.* GRUBE, FISCAL OFFICER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McNamara-Smith v. Grube*, Slip Opinion No. 2026-Ohio-3035.]**

*Mandamus—Elections—R.C. 731.29—R.C. 731.30—Village fiscal officer must certify sufficiency and validity of referendum petition regarding council resolution to local board of elections for placement on November 2026 general-election ballot, because resolution does not contain sufficiently specific reasons to have been passed as an emergency measure and fiscal officer does not have discretionary authority to determine whether resolution was an administrative action—Peremptory writ granted.*

(No. 2026-0906—Submitted August 4, 2026—Decided August 7, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER,

DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., concurred in part and dissented in part and would grant an alternative writ and set an expedited schedule to address whether the village resolution is not subject to referendum because it was an administrative action.

**Per Curiam.**

{¶ 1} Intervening respondents, EdgeConneX, Inc., and EdgeConneX MCN Ashville Properties 1, L.L.C. (collectively, "EdgeConneX"), want to build both a data center consisting of two single-story buildings and a natural-gas power-generating facility in Ashville, Ohio. Ashville's village council passed a resolution adopting a term summary by which the village agreed to explore assisting EdgeConneX with the data-center project. The term summary anticipates that the village and EdgeConneX may later agree to a development-and-supply agreement. The resolution states that the village council also repealed any conflicting local legislation.

{¶ 2} Relators, Laura V. McNamara-Smith, Brian Thomas Meyers, and Allison G. Meade (collectively, "McNamara-Smith"), submitted to respondent, Ashville Fiscal Officer April Grube, a petition to hold a referendum on the resolution. Grube, however, refused to certify the sufficiency and validity of the petition to the Pickaway County Board of Elections on the ground that the resolution is not subject to referendum, because it was passed as both an emergency measure and an administrative action.

{¶ 3} McNamara-Smith filed this original action in mandamus, seeking a writ ordering Grube to certify the sufficiency and validity of the referendum petition to the board of elections for placement on the November 3, 2026 general-election ballot. Grube filed an answer and a motion for judgment on the pleadings. EdgeConneX moved to intervene as a respondent and attached to that motion an answer and a motion for judgment on the pleadings.

{¶ 4} We conclude (1) that the resolution does not contain sufficiently specific reasons for the village council to have passed it as an emergency measure and (2) that Grube does not have the discretionary authority to determine whether the resolution was an administrative action. Therefore, we grant a peremptory writ ordering Grube to certify the sufficiency and validity of the referendum petition to the board of elections and deny Grube's motion for judgment on the pleadings. We express no opinion regarding whether the resolution was an administrative action that is not subject to referendum. In addition, we grant EdgeConneX's motion to intervene but deny EdgeConneX's motion for judgment on the pleadings. We also grant the motions filed by amici Data Center Resistance and Pickaway Informed Voters for leave to file memorandums in opposition to Grube's motion for judgment on the pleadings and grant the motion filed by amicus Pickaway Informed Voters for leave to file a memorandum in opposition to EdgeConneX's motion to intervene.

## I. BACKGROUND

### A. The resolution

{¶ 5} The Village of Ashville is a municipal corporation in Pickaway County. Grube is the village's fiscal officer.

{¶ 6} On April 6, 2026, Ashville's village council adopted Resolution No. 06-2026, titled "A Resolution Approving a Development and Supply Agreement Term Summary with EdgeConneX and Declaring an Emergency." According to the "whereas" clauses of the resolution, EdgeConneX intends to obtain permits from Ashville to construct and operate two single-story data-center buildings on property in the village. In addition, EdgeConneX, through an affiliate, intends to obtain a permit from the Ohio Power Siting Board for authority to construct and operate a natural-gas power-generating facility on the same property. The "whereas" clauses state that Ashville and EdgeConneX "want to memorialize a framework and timeline, for disclosure of Energy Center parameters, studies, and

EdgeConneX's paid support to the Village . . . through a Term Summary" and that "using the Term Summary, the Village of Ashville and EdgeConneX will negotiate and agree to a Development and Supply Agreement that must be approved by the Council for the Village of Ashville." Through the resolution, the village council approved the term summary, which is attached to the resolution.

{¶ 7} The term summary contains an outline of the development-and-supply agreement that Ashville and EdgeConneX hope to negotiate. The term summary states that it "does not constitute a legally binding agreement except as specifically noted." Four provisions, according to the language used, appear to set forth a binding agreement: First, EdgeConneX must provide the village with reports that it files with the Power Siting Board. Second, EdgeConneX will pay for Ashville's engineering-review costs and legal costs associated with negotiation of the development-and-supply agreement, and EdgeConneX will pay between $50,000 and $100,000 for the village to engage professional advisors for the project. Third, the village council agrees that a data-center moratorium that it previously enacted does not apply to the EdgeConneX project and that, to the extent necessary, the moratorium is suspended with respect to that project. Fourth, the village agrees to use its best efforts to approve any required permits, including building permits, that EdgeConneX must have for the project, so long as the permit applications comport with the village's building-permit requirements.

{¶ 8} In addition to approving the term summary, Resolution No. 06-2026 includes a clause that states, "All prior legislation, or any parts thereof, which is/are inconsistent with this Resolution is/are hereby repealed as to the inconsistent parts thereof." The resolution also contains a section that states, "Council declares this to be an emergency measure immediately necessary for the preservation of the public peace, health, and safety of this municipality and for the further reason that Council needs to accept these terms as soon as possible so that this project is not unnecessarily delayed."

4

**{¶ 9}** The village council adopted the resolution by a vote of five to one. The mayor approved the resolution on April 10.

### B. The referendum petition

**{¶ 10}** McNamara-Smith is an Ashville elector and member of a committee that wants to hold a referendum on Resolution No. 06-2026. On April 15, McNamara-Smith submitted a certified copy of a referendum petition to the village's offices and then began circulating the petition for signatures. On May 5, McNamara-Smith submitted the signed petition to the village's offices, which the village then transmitted to the board of elections for signature verification. On May 22, the board notified Grube that the petition contained 669 verified signatures— enough to meet the statutory requirement to place the referendum on the November 2026 general-election ballot, *see* R.C. 731.29.

**{¶ 11}** On June 26, Grube wrote a letter to the board of elections, notifying the board that she had "determined that the referendum petition [was] insufficient and invalid" and therefore should not be submitted to the village electors at the November 2026 general election. She explained to the board that Resolution No. 06-2026 is not subject to referendum, because it was passed as an emergency measure and was an administrative action, and neither of those types of actions taken by a municipal legislative body are subject to referendum.

### C. The mandamus action

**{¶ 12}** On July 14, McNamara-Smith filed a verified complaint seeking a writ of mandamus ordering Grube to certify the sufficiency and validity of the referendum petition to the board of elections so that the board could place the referendum on the November 3, 2026 general-election ballot.

**{¶ 13}** We ordered Grube to file an expedited response. 2026-Ohio-2703. Grube subsequently filed an answer and a motion for judgment on the pleadings. In addition, EdgeConneX moved to intervene as a respondent and attached to that motion an answer and a motion for judgment on the pleadings. Two interest

groups—Data Center Resistance and Pickaway Informed Voters—filed motions for leave to file memorandums in opposition to Grube's motion for judgment on the pleadings, in support of McNamara-Smith. Pickaway Informed Voters also filed a motion for leave to file a memorandum in opposition to EdgeConneX's motion to intervene.

## II. LEGAL ANALYSIS

### A. EdgeConneX's motion to intervene

{¶ 14} EdgeConneX, Inc., entered into the term summary with the village, and EdgeConneX MCN Ashville Properties 1, L.L.C., owns the property on which the two data-center buildings and the power-generating facility would be built. EdgeConneX filed a motion to intervene in this action as respondents and attached to the motion an answer and a motion for judgment on the pleadings. McNamara-Smith opposes the motion to intervene. Grube did not file a response to the motion to intervene.

{¶ 15} EdgeConneX seeks intervention by right or, alternatively, permissive intervention. Under Civ.R. 24(A), a timely application for intervention by right shall be granted "when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." A timely application for permissive intervention may be granted if the applicant's claim or defense and the main action have questions of law or fact in common. Civ.R. 24(B). EdgeConneX filed its motion to intervene before Grube's responsive pleading was due; therefore, EdgeConneX's motion to intervene was timely filed. Under Civ.R. 24(C), a proposed intervenor must attach a pleading to its motion to intervene, which EdgeConneX did by attaching an answer to its motion.

6

{¶ 16} Here, EdgeConneX, Inc., is a signatory to the term summary that is subject to Resolution No. 06-2026, and EdgeConneX MCN Ashville Properties 1, L.L.C., owns the property on which the two data-center buildings and the power-generating facility would be built. Therefore, they each have an interest in this litigation that could be impaired by this court's decision. And Grube, as the village fiscal officer, does not adequately represent EdgeConneX's interest here, *see* Civ.R. 24(A); Grube's interests are to correctly perform her duties regarding certification of the referendum petition to the board of elections, while EdgeConneX's interests are to ensure the village's implementation of the term summary. In addition, EdgeConneX raises defenses that have questions of law in common with Grube.

{¶ 17} We have previously granted motions to intervene filed by property owners in writ cases in which electors sought referendums of ordinances concerning the property owner's property. *See State ex rel. Commt. for the Referendum of Ord. No. 3844-02 v. Norris*, 2003-Ohio-3887, ¶ 8-9; *State ex rel. Laughlin v. James*, 2007-Ohio-4811, ¶ 15, 18. We do so here as well and grant EdgeConneX's motion to intervene.

### B. Judgment-on-the-pleadings and mandamus standards

{¶ 18} Along with their answers, Grube and EdgeConneX filed motions for judgment on the pleadings.[1] A motion for judgment on the pleadings may be granted when the court, "construing all material allegations in the complaint as true, determines that the relators can prove no set of facts that would entitle them to relief." *State ex rel. Bohlen v. Halliday*, 2021-Ohio-194, ¶ 12. If, however, it

---

1. EdgeConneX also attached a motion for judgment on the pleadings to its motion to intervene, raising essentially the same arguments that Grube raised in her own motion for judgment on the pleadings. Because only a respondent may file a motion for judgment on the pleadings when an answer is filed, *see* S.Ct.Prac.R. 12.04(B)(1), technically, EdgeConneX's motion for judgment on the pleadings is not before us until we grant its motion to intervene, which we have done today. *See State ex rel. Bohlen v. Halliday*, 2021-Ohio-194, ¶ 12, fn. 1. In *Bohlen*, however, which presented a similar situation, we decided the intervenor's motion for judgment on the pleadings at the same time as we denied the respondent's motion to dismiss and granted a peremptory writ. *See id.* at ¶ 12, fn. 1; *id.* at ¶ 28. We do so here as well.

appears that the relators' claims may have merit, an alternative writ should be granted setting the schedule for the presentation of evidence and filing of briefs. *See State ex rel. Morenz v. Kerr*, 2004-Ohio-6208, ¶ 13; *see also* S.Ct.Prac.R. 12.04(C). But if the facts are uncontroverted and it appears beyond doubt that the relators are entitled to the requested relief, a peremptory writ will issue. *Morenz* at ¶ 13.

{¶ 19} To obtain a writ of mandamus, McNamara-Smith must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of Grube to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, 2021-Ohio-673, ¶ 5; *see State ex rel. LaChappelle v. Harkey*, 2023-Ohio-2723, ¶ 8. McNamara-Smith lacks an adequate remedy in the ordinary course of the law because a declaratory judgment would not be a complete remedy unless coupled with a mandatory injunction compelling Grube to certify the sufficiency and validity of the referendum petition to the board of elections. *See Laughlin* at ¶ 19. McNamara-Smith also lacks an adequate remedy in the ordinary course of the law given the proximity of the November 2026 general election. *See id.*

### C. The municipal-referendum procedure

{¶ 20} The General Assembly has established a municipal-referendum procedure. *See* R.C. 731.29 through 731.41. To hold a referendum on any ordinance or other measure, such as a resolution, passed by the legislative authority of a village, the proponents of the referendum must, within 30 days of the passage of the measure, submit a petition to the village clerk signed by at least 35 percent of the number of electors in the village who voted for governor in the last general election. R.C. 731.29. The village clerk must then transmit the petition to the board of elections for signature validation. *Id.* At this stage of the municipal-referendum procedure, the village clerk has a "'mandatory, ministerial'" duty to transmit the petition to the board. *LaChappelle* at ¶ 12, quoting *State ex rel. Oberlin Citizens*

*for Responsible Dev. v. Talarico*, 2005-Ohio-5061, ¶ 16. If the board determines that the petition received a sufficient number of signatures, it returns the petition to the village clerk, "who exercises limited discretionary authority to determine the sufficiency and validity of the petition" before certifying the petition back to the board. *Oberlin Citizens* at ¶ 14; *see also LaChappelle* at ¶ 11. Upon receiving the village clerk's certification, the board must submit the referendum to the village electors at the next general election occurring subsequent to 90 days after it received the certification, but only if the board determines that the petition is sufficient and valid. *See* R.C. 731.29 and 3501.11(K); *Oberlin* at ¶ 14.

{¶ 21} Here, Ashville has assigned the duties of the village clerk to its village fiscal officer, Grube. *See* R.C. 733.262(C); Ashville Cod.Ord. 133.01(b); *see also State ex rel. Donahue v. Bellbrook*, 44 Ohio St.2d 36, 37-38 (1975) ("In the absence of an official specifically designated village clerk or city auditor, a referendum petition must be filed with the official who in fact performs the duties of clerk or auditor."). And Grube submitted the referendum petition to the board of elections, which determined that the petition contained sufficient signatures and then returned the petition to Grube. Thus, we are currently at the stage of the municipal-referendum procedure in which Grube exercises limited discretionary authority to determine the sufficiency and validity of the petition. In this case, Grube refused to certify the sufficiency and validity of the referendum petition on the ground that Resolution No. 06-2026 is not subject to referendum, because it was passed by the village council both as an emergency measure and an administrative action. McNamara-Smith challenges both bases of Grube's determination.

*D. The emergency resolution*

{¶ 22} Generally, ordinances and other measures passed by a municipal legislative authority take effect 30 days after they are passed. *See* R.C. 731.29. However, R.C. 731.30 provides that

emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.

Emergency ordinances or measures are not subject to referendum. *State ex rel. Halstead v. Jackson*, 2022-Ohio-3205, ¶ 23, citing R.C. 731.29 and 731.30.

{¶ 23} Resolution No. 06-2026 contains a section designating it as an emergency measure. That section of the resolution states:

> Council declares this to be an emergency measure immediately necessary for the preservation of the public peace, health, and safety of this municipality and for the further reason that Council needs to accept these terms as soon as possible so that this project is not unnecessarily delayed. Wherefore, provided this Resolution receives the required affirmative votes of Council, this Resolution shall take effect and be in force immediately upon passage by Council.

{¶ 24} Resolution No. 06-2026 passed by a vote of five to one, giving it sufficient votes to pass as an emergency measure. And because the resolution passed as an emergency measure, Grube refused to certify the sufficiency and validity of the referendum petition to the board of elections.

{¶ 25} McNamara-Smith first argues that Grube has no discretionary authority to determine whether a village resolution was passed as an emergency

measure and that Grube is required to forward the referendum petition to the board of elections regardless of whether the petitioners seek referendum of an emergency measure. Second, McNamara-Smith argues that even if Grube has such discretionary authority, Resolution No. 06-2026 is not a valid emergency measure.

{¶ 26} Regarding Grube's discretionary authority, we do not appear to have explicitly held that it is within a fiscal officer's limited discretionary authority to determine whether an ordinance or resolution was passed as an emergency measure. But we have denied requests for writs from parties seeking to order other municipal officials to certify the sufficiency and validity of a referendum petition to a board of elections when the official determined that the underlying ordinance or resolution was an emergency measure that was not subject to referendum. *See Laughlin*, 2007-Ohio-4811, at ¶ 43-44 (village clerk-treasurer); *State ex rel. Lipvosky v. Kizak*, 15 Ohio St.2d 27, 30 (1968) (affirming court of appeals' decision denying writ as to village clerk). Based on these prior decisions, we hold that a fiscal officer has limited discretionary authority to refuse to certify the sufficiency and validity of a petition that seeks referendum of an ordinance or other measure passed by the legislative authority of a municipal corporation if the ordinance or other measure has a section identifying it as an emergency measure and it passed with sufficient votes to qualify as an emergency measure. It is apparent from the face of a measure whether it contains a section identifying it as an emergency measure and whether it received the requisite votes to qualify as such.

{¶ 27} But even if the ordinance or other measure contains a section designating it as an emergency measure, the language of that section might not comply with the requirements of the Revised Code. In that instance, the fiscal officer has a clear legal duty to certify to the board of elections the sufficiency and validity of a referendum petition pertaining to such a measure. *See State ex rel. Webb v. Bliss*, 2003-Ohio-3049, ¶ 8, 11, 15-24 (granting writ of mandamus ordering village clerk to certify sufficiency and validity of referendum petition to board of

elections concerning ordinance that contained insufficient reasons for declaring it to be an emergency measure). We must therefore determine whether Resolution No. 06-2026 contains sufficient reasons for the village council to have declared it to be an emergency measure. We conclude that it does not.

{¶ 28} When assessing whether a resolution complies with R.C. 731.30, our review is limited. *State ex rel. Hasselbach v. Sandusky Cty. Bd. of Elections*, 2019-Ohio-3751, ¶ 32. We may not determine whether the reason the village council gave for passing the resolution as an emergency measure "was a valid one." *Id.* But we may determine whether the reason given was "'purely conclusory, tautological, or illusory.'" *Id.*, quoting *Bliss* at ¶ 14. In doing so, we must determine whether the council apprised voters of the *specific* reasons for declaring the resolution to be an emergency measure. *See Bliss* at ¶ 20. We have previously held that language in a resolution that simply parrots R.C. 731.30 by referring to "the preservation of the public peace, health, and safety" of the municipality is insufficient, *Hasselbach* at ¶ 34, as are reasons given for classifying the resolution as an emergency measure that could broadly apply to any ordinance or other measure, *see id.* at ¶ 33-34. Moreover, proffered after-the-fact reasons for declaring a resolution to be an emergency measure are insufficient; the reasons must be contained in the resolution. *Id.* at ¶ 36. The reason for declaring a resolution to be an emergency measure does not need to be lengthy. For example, when reviewing an ordinance pertaining to a construction project, we found that the ordinance contained sufficient language to explain its classification as an emergency measure because it linked the improvements for the project with the lateness of the construction season. *See State ex rel. Moore v. Adams*, 62 Ohio St.3d 130, 132-133 (1991). But the language does need to "apprise voters of any specific reasons to declare the [resolution] to be an emergency," *Bliss* at ¶ 20.

{¶ 29} Here, Resolution No. 06-2026 states that it was passed as an emergency measure "for the preservation of the public peace, health, and safety of

12

[the] municipality and for further reason that Council need[ed] to accept [the summary] terms as soon as possible so that [the] project [would not be] unnecessarily delayed." The first reason given in the resolution merely parrots the language of R.C. 731.30 by referring to "the preservation of the public peace, health, and safety" of the municipality. The second reason—that council "needs to accept [the summary] terms as soon as possible so that [the] project [would not be] unnecessarily delayed"—could broadly apply to almost any emergency measure. All emergency measures are presumably designated as such because commencement of the underlying matter should not be delayed. But Resolution No. 06-2026 does not explain *why* waiting 30 days for the resolution to take effect, *see* R.C. 731.29, would unnecessarily delay the EdgeConneX project. In *Hasselbach*, we found that an emergency clause in a municipal ordinance stating "Said emergency being the immediate undertaking of the project to avoid an increase in project cost" was insufficient. *Hasselbach* at ¶ 34-36. *Hasselbach* involved a referendum pertaining to a private development, and we held that if a connection exists between a municipality's public peace, health, or safety and a private developer's interests, the ordinance or other measure must provide some explanation of that connection to satisfy the emergency-measure requirements of R.C. 731.30. *Id.* at ¶ 37. Here, Resolution No. 06-2026 contains even less detail than was provided in the *Hasselbach* ordinance: Resolution No. 06-2026 does not state that a delay in the data-center project would increase project costs. Nor does it contain language, as in *Moore*, stating that emergency action is needed given the lateness of the construction season.

{¶ 30} Grube argues that by reviewing the term summary, a voter could discern why the village council adopted Resolution No. 06-2026 as an emergency measure—for example, a voter could discern that the village council needed to approve the term summary to obtain significant funding from EdgeConneX for the village. But R.C. 731.30 requires that the reasons for the emergency designation

"be set forth in one section of the ordinance or other measure." And even looking to the six-page term summary, we see nothing that indicates that a 30-day delay in adopting the term summary would impede the data-center project or the village's receipt of funding from EdgeConneX, and Grube does not explain why such a short delay would result in any such impediment.

{¶ 31} Resolution No. 06-2026 "contains only conclusory statements that fail to apprise voters of any specific reasons to declare the [resolution] to be an emergency," *Bliss*, 2003-Ohio-3049, at ¶ 20. Accordingly, the resolution is not exempt from referendum based on its having been passed as an emergency measure.

### E. Administrative action

{¶ 32} Article II, Section 1f of the Ohio Constitution reserves the municipal-referendum power only for legislative action. *Buckeye Community Hope Found. v. Cuyahoga Falls*, 82 Ohio St.3d 539, 542 (1998). Consequently, "actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute administrative action, are not subject to referendum proceedings." *Id.* at paragraph two of the syllabus.

{¶ 33} Grube refused to certify to the board of elections the sufficiency and validity of the referendum petition at issue here on the ground that Resolution No. 06-2026 was an administrative action and thus not subject to referendum. In a letter to the board, Grube wrote that the resolution "did not create any law or regulation" but "[i]nstead, it approved a term sheet between the Village and EdgeConneX." She concluded that the resolution therefore was an administrative action.

{¶ 34} However, the determination whether Resolution No. 06-2026 was an administrative action is not within Grube's discretion to make. "[C]ity auditors and village clerks exceed their ministerial and limited discretionary authority under the pertinent statutes by deciding whether ordinances [or other measures] are legislative or administrative for purposes of determining whether they are subject to initiative and referendum." *Oberlin Citizens*, 2005-Ohio-5061, at ¶ 35; *see State*

*ex rel. Clark v. Twinsburg*, 2022-Ohio-3089, ¶ 19. The municipal official's discretion is limited to matters of form that do not involve judicial or quasijudicial determinations. *See State ex rel. N. Main St. Coalition v. Webb*, 2005-Ohio-5009, ¶ 30. Whether an action of a municipality is legislative or administrative is a judicial question and, as such, is beyond the limited discretionary authority of the municipal official to make. *See id.*; *see also State ex rel. Barberis v. Bay Village*, 31 Ohio Misc. 203, 204 (C.P. 1971) ("Whether any given action of a municipal council is legislative or administrative is a judicial question . . . ."), cited with approval in *N. Main St. Coalition* at ¶ 31.

{¶ 35} In *N. Main St. Coalition*, we held that a municipal official generally may not refuse to certify the sufficiency and validity of a referendum petition to a board of elections if the official's reason for doing so requires him or her to obtain information that is not apparent from the face of the petition. *N. Main St.* at ¶ 30. Grube argues, citing *N. Main St. Coalition*, that she did not abuse her discretion by refusing to certify the sufficiency and validity of the referendum petition to the board of elections in this case, because she did not need to inquire into matters beyond the face of the petition to determine that Resolution No. 06-2026 was administrative. But in *N. Main St. Coalition*, we also determined that a municipal official lacks the discretion to determine whether an action is administrative or legislative. *Id.* at ¶ 31. The official's collection of outside information in that case constituted *additional* support for our conclusion that her refusal to certify the petition to the board of elections was beyond her discretion. *See id.* at ¶ 31-32. In short, even if a municipal official does not need to look at outside information to determine whether an action is administrative or legislative, such a determination is beyond the official's discretionary authority to make.

{¶ 36} Based on the foregoing, we conclude that Grube "abused [her] limited discretionary authority by refusing to certify the petition['s] sufficiency and validity based upon a judicial or quasi-judicial determination that the subject matter

of [Resolution No. 06-2026] was administrative rather than legislative," *Oberlin Citizens* at ¶ 16.

{¶ 37} Grube and EdgeConneX argue, however, that even if Grube abused her discretion, we should deny the writ, because if Resolution No. 06-2026 was an administrative action, granting the writ would be a vain act. *See State ex rel. Moore v. Malone*, 2002-Ohio-4821, ¶ 38 ("Mandamus will not issue to compel a vain act."). Boards of elections have discretion to determine which actions are administrative and which are legislative, and they have a duty to keep referendums of administrative actions off the ballot. *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 2015-Ohio-3761, ¶ 9; *see* R.C. 3501.11(K).

{¶ 38} In *Oberlin Citizens*, we applied the vain-act exception in deciding whether an ordinance that was the subject of a referendum petition was an administrative action, even though we determined that the city's auditor had abused his discretion by refusing to certify the petition to the board of elections. 2005-Ohio-5061 at ¶ 16-20. We issued our decision in *Oberlin Citizens* in late September 2005, and based on the proximity of the November 2005 general election, we considered whether the ordinance at issue was an administrative action that was not subject to referendum. *Id.* at ¶ 20. More recently, however, in *Clark*, we granted a writ of mandamus ordering a city clerk to transmit referendum petitions to a board of elections without reaching the issue whether the underlying measure was an administrative action. 2022-Ohio-3089 at ¶ 19-21. We issued our decision in *Clark* in early September 2022, and given the time frame before the November 2022 general election (which was one month greater than the time frame between our decision and the election date in *Oberlin Citizens*), we did not find it necessary to address whether the underlying measure was an administrative action. *See Clark* at ¶ 21.

{¶ 39} Here, we are issuing this decision even earlier in the election cycle than in *Clark* and similarly do not address whether Resolution No. 06-2026 was an

administrative or legislative action.  As we have emphasized, "[t]hese issues should be initially decided by the local authorities best equipped to gauge compliance with election laws—boards of elections—after petitions are certified to them by city auditors and village clerks, rather than by auditors and clerks," *Oberlin Citizens* at ¶ 35.  Municipal officials should not attempt to short-circuit this process by deciding the issues themselves.

### F.  Peremptory writ

{¶ 40} Based on the foregoing, Grube has a clear legal duty to certify the sufficiency and validity of the referendum petition to the board of elections and McNamara-Smith has a clear legal right to the requested relief in the form of a writ ordering Grube to do so.  Further, this case presents pure questions of law on undisputed facts, and because it appears beyond doubt that McNamara-Smith is entitled to the requested relief, a peremptory writ will issue.  *Morenz*, 2004-Ohio-6208, at ¶ 13; *Bohlen*, 2021-Ohio-194, at ¶ 28.  We therefore issue a peremptory writ of mandamus ordering Grube to certify the sufficiency and validity of the referendum petition to the board of elections.  The deadline for certification of petitions for placement on the November 3, 2026 general-election ballot was August 5.  *See* R.C. 731.29.  However, because Grube's unjustified delay in certifying the petition caused the deadline to pass, McNamara-Smith is entitled to a writ compelling Grube's certification of the petition for placement of the referendum on the November 2026 general-election ballot.  *See N. Main St. Coalition*, 2005-Ohio-5009, at ¶ 47; *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 57-58 (1994).  But the board of elections must still make its own determination regarding the sufficiency and validity of the petition, *see* R.C. 3501.11(K), and we express no opinion whether Resolution No. 06-2026 was an administrative action that is not subject to referendum.

## III.  CONCLUSION

{¶ 41} Resolution No. 06-2026 does not contain sufficiently specific reasons for Ashville's village council to have passed it as an emergency measure. And Grube does not have the discretionary authority to determine whether the resolution was an administrative action.  Therefore, we deny Grube's motion for judgment on the pleadings and grant a peremptory writ ordering Grube to certify the sufficiency and validity of the referendum petition to the Pickaway County Board of Elections.

{¶ 42} In addition, we grant EdgeConneX's motion to intervene but deny EdgeConneX's motion for judgment on the pleadings.  We also grant the motions filed by amici for leave to file memorandums in opposition to Grube's motion for judgment on the pleadings and grant the motion filed by amicus Pickaway Informed Voters for leave to file a memorandum in opposition to EdgeConneX's motion to intervene.

Writ granted.

_____

Baurichter Law, L.L.C., and Austin Z. Baurichter, for relators.

Issac Wiles Burkholder & Miller, L.L.C., Brian M. Zets, and Joseph L. Shannon, for respondent.

Vorys, Sater, Seymour and Pease, L.L.P., Joseph R. Miller, Christopher L. Ingram, Garrett M. Anderson, and Christopher J. Belmarez, for intervening respondents.

DannLaw, Marc E. Dann, Jeffrey A. Crossman, and Andrew M. Engel; and Edward Fitzgerald, for amicus curiae Data Center Resistance, in support of relators.

Terry J. Lodge, for amicus curiae Pickaway Informed Voters, in support of relators.

_____